IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEOUL SEMICONDUCTOR CO., LTD and SEOUL VIOSYS CO., LTD., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. _____ |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| HAWTHORNE GARDENING COMPANY, | ) ) ) | |
| Defendant. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Seoul Semiconductor Co., Ltd. ("Seoul Semiconductor") and Seoul Viosys Co., Ltd. ("Seoul Viosys"), (collectively the "Seoul Plaintiffs") for their Complaint against Defendant Hawthorne Gardening Company ("HGC") allege as follows:

## NATURE OF THE ACTIONS

1.     The Seoul Plaintiffs bring this patent infringement action to protect their valuable patented technology relating to light emitting diodes ("LEDs") and LED lighting. An LED is a semiconductor device that converts electrical energy into light. LEDs have many advantages over conventional light sources, including lower energy consumption, longer lifetime, and smaller size.

2.     Seoul Semiconductor was founded in 1992 with approximately 30 employees in a small space of a commercial building in Bongchen-dong, Seoul, Korea. From those initial 30 employees, Seoul Semiconductor has grown into one of the largest manufacturers of LEDs in the world. Its subsidiary, Seoul Viosys, is also a leading company in the LED industry.

3.     The Seoul Plaintiffs' success is in large part due to their significant investment in innovation and their respect for intellectual property. Seoul Semiconductor has invested in research and development ("R&D") for decades. Seoul Semiconductor invests over 10% of sales revenue

into R&D and owns one of the largest LED patent portfolios in the world, which includes more than 10,000 patents worldwide.

## THE PARTIES

4.      Plaintiff Seoul Semiconductor is a company organized and existing under the laws of the Republic of Korea, with its principal place of business at 1B-25, 727, Wonsi-dong, Danwon-gu, Ansan-city, Gyeonggi-do, Korea 425-851.

5.      Plaintiff Seoul Viosys is a company organized and existing under the laws of the Republic of Korea, with its principal place of business at 65-16, Sandan-ro 163 beon-gil, Danwon-gu, Ansan-city, Gyeonggi-do, Korea 425-851. Seoul Viosys is a subsidiary of Seoul Semiconductor.

6.      Defendant HGC is a Delaware corporation with a place of business at 3204 NW 38th Cir, Vancouver, Washington, 9866. HGC's registered agent, The Corporation Trust Company, is located at 1209 Orange St., Wilmington, Delaware 19801. Upon information and belief, HGC sells and offers to sell various horticulture lighting products, such as Gavita RS Pro 2400e LED, Gavita RS 1900e LED, Gavita CT 1930e LED, Gavita CT 2000e LED, Gavita Pro 1700e LED, Gavita Pro 1650e, Gavita Pro 900e, and Gavita LED Clone Bar series light fixtures in the United States.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a) because, at the very least, this action arises under the patent laws of the United States, including 35 U.S.C. § 271 et seq.

8.      This Court has personal jurisdiction over HGC because it is a corporation organized and existing under the laws of the State of Delaware.

9.      Venue is proper within this judicial district under 28 U.S.C. §§ 1391(b) and 1400(b) because HGC has committed acts of infringement in this district and because HGC is a

corporation organized and existing under the laws of the State of Delaware and therefore resides in this district.

## PATENTS-IN-SUIT

10.    Seoul Semiconductor is the lawful owner of all right, title, and interest in United States Patent No. 9,112,120 entitled "White Light Source and White Light Source System Including the Same" ("the '120 patent"), including the right to sue and to recover for infringement thereof. The '120 patent was duly and legally issued on August 18, 2015, by the United States Patent and Trademark Office to Tachibana et al. A copy of the '120 patent is attached hereto as Exhibit A.

11.    Seoul Semiconductor is the lawful owner of all right, title, and interest in United States Patent No. 11,622,509 entitled "Light Source for Plant Cultivation" ("the '509 patent"), including the right to sue and to recover for infringement thereof. The '509 patent was duly and legally issued on April 11, 2023, by the United States Patent and Trademark Office to Tachibana et al. A copy of the '509 patent is attached hereto as Exhibit B.

12.    Seoul Viosys is the lawful owner of all right, title, and interest in United States Patent No. 12,078,302 entitled "Light Source for Plant Cultivation and Plant Cultivation Device" ("the '302 patent"), including the right to sue and to recover for infringement thereof. The '302 patent was duly and legally issued on September 3, 2024, by the United States Patent and Trademark Office to Tachibana et al. A copy of the '302 patent is attached hereto as Exhibit C.

13.    Seoul Semiconductor is the lawful owner of all right, title, and interest in United States Patent No. 12,218,290 entitled "LED Lighting Apparatus Having Improved Color Rendering and LED Filament" ("the '290 patent"), including the right to sue and to recover for infringement thereof. The '290 patent was duly and legally issued on February 4, 2025, by the

United States Patent and Trademark Office to Tachibana et al. A copy of the '290 patent is attached hereto as Exhibit D.

14.     Seoul Semiconductor is the lawful owner of all right, title, and interest in United States Patent No. 7,397,069 entitled "Semiconductor Device" ("the '069 patent"), including the right to sue and to recover for infringement thereof. The '069 patent was duly and legally issued on July 8, 2008, by the United States Patent and Trademark Office to Tachibana et al. A copy of the '069 patent is attached hereto as Exhibit E.

15.     Seoul Semiconductor is the lawful owner of all right, title, and interest in United States Patent No. 9,269,868 entitled "Semiconductor Light Emitting Element and Method For Manufacturing Semiconductor Light Emitting Element" ("the '868 patent"), including the right to sue and to recover for infringement thereof. The '868 patent was duly and legally issued on February 23, 2016, by the United States Patent and Trademark Office to Kushibe et al. A copy of the '868 patent is attached hereto as Exhibit F.

16.     Seoul Semiconductor is the lawful owner of all right, title, and interest in United States Patent No. 7,667,225 entitled "Light Emitting Device" ("the '225 patent"), including the right to sue and to recover for infringement thereof. The '225 patent was duly and legally issued on February 23, 2010, by the United States Patent and Trademark Office to Lee et al. A copy of the '225 patent is attached hereto as Exhibit G.

17.     Seoul Viosys is the lawful owner of all right, title, and interest in United States Patent No. 9,716,210 entitled "Light Emitting Diode and Method of Fabricating the Same" ("the '210 patent"), including the right to sue and to recover for infringement thereof. The '210 patent was duly and legally issued on July 25, 2017, by the United States Patent and Trademark Office to Kim et al. A copy of the '210 patent is attached hereto as Exhibit H.

18.     Seoul Viosys is the lawful owner of all right, title, and interest in United States Patent No. 10,418,514 entitled "Light Emitting Diode and Method of Fabricating the Same" ("the '514 patent"), including the right to sue and to recover for infringement thereof. The '514 patent was duly and legally issued on September 17, 2019, by the United States Patent and Trademark Office to Kim et al. A copy of the '514 patent is attached hereto as Exhibit I.

19.     Seoul Semiconductor is the lawful owner of all right, title, and interest in United States Patent No. 8,981,410 entitled "Distributed Bragg Reflector for Reflecting Light of Multiple Wavelengths from an LED" ("the '410 patent"), including the right to sue and to recover for infringement thereof. The '410 patent was duly and legally issued on March 17, 2015, by the United States Patent and Trademark Office to Lin. A copy of the '410 patent is attached hereto as Exhibit J.

20.     Seoul Viosys is the lawful owner of all right, title, and interest in United States Patent No. 9,269,871 entitled "Light Emitting Diode" ("the '871 patent"), including the right to sue and to recover for infringement thereof. The '871 patent was duly and legally issued on February 23, 2016, by the United States Patent and Trademark Office to Kim et al. A copy of the '871 patent is attached hereto as Exhibit K.

## HGC'S KNOWLEDGE OF THE PATENTS AND ITS INFRINGEMENT

21.     On November 11, 2024, Seoul Semiconductor sent a warning letter to HGC notifying it that HGC was infringing Seoul Semiconductor's patent rights.   Specifically, Seoul Semiconductor wrote that HGC was selling a product, Gavita Pro RS 2400e LED 208-480V HGC906409 ("Gavita product"), that was infringing several of the Seoul Plaintiffs' patents, including the '120 patent, the '871 patent, and the '509 patent.   Seoul Semiconductor attached an example claim chart demonstrating how the Gavita product being sold by HGC infringes claims of Seoul Semiconductor and Seoul Viosys's patents.   The claim chart contained pictures of the

Gavita product along with detailed photos of reverse engineered portions of the products to show infringement, including a cross section image of the LED and electrode layer.    Seoul Semiconductor asked that HGC stop selling products that infringe the Seoul Plaintiffs' patent rights. In order to ensure that HGC's management understood the seriousness of the notice, Seoul Semiconductor not only sent this warning letter and claim chart by Federal Express to HGC's Executive Vice President and Chief Communications Officer, but Seoul Semiconductor also sent copies to companies related to Hawthorne, including Hawthorne Hydroponics LLC and the Chairman, Chief Executive Officer and President, as well as the Executive Vice President, General Counsel and Corporate Secretary, of Scotts Miracle-Gro at its Corporate Headquarters.

22.    Despite requesting that HGC respond to Seoul Semiconductor's November 2024 warning letter, HGC did not respond, nor did it stop selling the product accused of infringement. On December 11, 2024, Seoul Semiconductor sent another warning letter to HGC, as well as Hawthorne Hydroponics LLC and Scotts-Miracle Gro Corporate Headquarters, with copies to the same upper management of all three companies.    Seoul Semiconductor noted that it had not received any response to its November 2024 letter, despite Seoul Semiconductor providing notice of infringement of specific patents by the Gavita product, including a claim chart.    Seoul Semiconductor wrote that it was HGC's responsibility to ensure that it was not selling products that infringed another company's patent rights.    Seoul Semiconductor warned that if HGC declined to stop selling products that are accused of infringement, Seoul Semiconductor would consider it evidence of willful infringement.    Seoul Semiconductor again asked HGC to provide written confirmation that it would stop selling products that infringe the Seoul Plaintiffs' patent rights.

23.     On December 20, 2024, Seoul Semiconductor finally received a letter from a law firm claiming to represent The Scotts Miracle-Gro Company and its subsidiaries and affiliates (collectively "Scotts").    The law firm acknowledged receiving copies of Seoul Semiconductor's November 2024 and December 2024 warning letters, but provided no substantive response to any of the infringement allegations.    Nor did the letter provide any assurance, as repeatedly requested, that HGC would stop selling products accused of infringement.    Instead, the letter said that the firm was "reviewing your correspondence and will respond in due course."

24.     On January 6, 2025, having heard nothing further from HGC, Seoul Semiconductor sent a further warning notice to the law firm representing Scotts and HGC.    Seoul Semiconductor noted that it had not received any substantive response or commitment to take any actions whatsoever to stop infringing despite Seoul Semiconductor having provided specific notice of infringement of specific patents (the '120 patent, the '871 patent, and the '509 patent) by a specific product (the Gavita product).    Seoul Semiconductor explained that HGC's continued sale of infringing products, even after receiving multiple warnings of patent infringement, appeared to be willful infringement.    For the third time, Seoul Semiconductor requested confirmation that Scotts and its subsidiaries, which includes HGC, would stop selling products infringing the Seoul Plaintiffs' patent rights.    Seoul Semiconductor did not receive any response to this letter or any substantive response to any of its earlier warning letters.

25.     On March 24, 2025, still having received nothing further from Scotts or HGC, Seoul Semiconductor sent yet another warning letter.    Seoul Semiconductor noted that it had not received any response on how HGC intended to cease patent infringing activities.    Seoul Semiconductor also notified HGC/Scotts that it had discovered that the Gavita product infringed additional patents belonging to the Seoul Plaintiffs, including the '302 patent; the '290 patent;

the '410 patent; the '069 patent; the '225 patent; the '210 patent; the '514 patent; and the '868 patent.    In addition to this notice warning of infringement of specific patents by a specific product (the Gavita product), Seoul Semiconductor also included 23 pages of additional claim charts demonstrating infringement of each of the following of the Seoul Plaintiffs' patents that are asserted in this litigation: the '120 patent, the '871 patent, the '302 patent, the '290 patent, the '410 patent, the '069 patent, the '225 patent, the '210 patent, the '514 patent, and the '868 patent. Seoul Semiconductor asked yet again that HGC and Scotts stop selling products infringing the Seoul Plaintiffs' patent rights.    Seoul Semiconductor has never received any response to this letter or any substantive communication from HGC or Scotts responding to any of its other warning letters.    On information and belief, HGC continues to sell the Gavita product for which Seoul Semiconductor has repeatedly warned HGC and Scotts that it is infringing the specific patents asserted in this litigation.

**MARKING**

26.    The Seoul Plaintiffs have complied with 35 U.S.C. § 287 with respect to the '120 patent, the '069 patent, the '868 patent, the '225 patent, the '210 patent, the '514 patent, the '410 patent, and the '871 patent, and thereby provided notice to the public, including but not limited to HGC, of those patents.

27.    For example, to the extent the Seoul Plaintiffs made, offered for sale, sold, or imported into the United States products covered by the Patents-in-Suit identified in the preceding paragraph, the Seoul Plaintiffs marked substantially all of such products and/or product packaging by fixing thereon the word "patent," along with those patent numbers or an internet address at which the Seoul Plaintiffs posted information associating the patented products with their corresponding patent numbers (including the Patents-in-Suit identified in the preceding paragraph), in compliance with 35 U.S.C. § 287.

28.    Those    internet    addresses    include    the    following    URLs    —
https://www.seoulsemicon.com/en/company/parent/certificates/patentportfolio    and
https://www.seoulviosys.com/en/company/certificates    —and reflect virtual marking patent lists
that the Seoul Plaintiffs that have been continuously updating since at least January of 2015. A
copy of the most recent virtual marking patent lists for Seoul Semiconductor and Seoul Viosys,
respectively, are attached as Exhibit L and Exhibit M.

## COUNT 1
## INFRINGEMENT OF U.S. PATENT NO. 9,112,120
## EXEMPLARY CLAIM 1

29.    HGC has infringed and continues to infringe one or more claims of the '120 patent,
including but not limited to exemplary claim 1, in violation of 35 U.S.C. § 271(a), at least by
without authority making, using, offering to sell and/or selling the HGC906409 Gavita Pro RS
2400e LED light fixture within the United States.

30.    The Gavita product is a white light source satisfying the relational equation:

$$-0.2 \leqq [(P(\lambda) \times V(\lambda))/(P(\lambda max1) \times V(\lambda max1)) - (B(\lambda) \times V(\lambda))/(B(\lambda max2) \times V(\lambda max2))] \leqq +0.2,$$

where a light emission spectrum of the white light source is $P(\lambda)$; a light emission spectrum of
black-body radiation having a same color temperature as that of the white light source is $B(\lambda)$; a
spectrum of a spectral luminous efficiency is $V(\lambda)$; a wavelength at which $P(\lambda) \times V(\lambda)$ becomes
largest is $\lambda max1$; and a wavelength at which $B(\lambda) \times V(\lambda)$ becomes largest is $\lambda max2$. The graph

below shows a graph of the relevant equation calculated for the Gavita product.



31.    HGC's infringement has caused and is continuing to cause damage and irreparable injury to Plaintiffs. Plaintiffs will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court, as a remedy at law alone would be inadequate.

32.    HGC's infringement has occurred with knowledge of the '120 patent and knowledge that its acts constitute infringement. HGC's continuing conduct, therefore, is willful.

33.    Plaintiffs are entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

<u>**COUNT 2**</u>
**INFRINGEMENT OF U.S. PATENT NO. 11,622,509**
**EXEMPLARY CLAIM 10**

34.    HGC has infringed and continues to infringe one or more claims of the '509 patent, including but not limited to exemplary claim 10, in violation of 35 U.S.C. § 271(a), at least by without authority making, using, offering to sell and/or selling the HGC906409 Gavita Pro RS 2400e LED light fixture within the United States.

35.    The Gavita product includes first light sources and second light sources as required by claim 10. The images below show a portion of the light fixture including first and second light sources, where the number of second light sources is different from the number of first light sources.



first light source            second light source    substrate

36.    The graph of the emission spectrums of a first light source and a second light source below shows the light sources have the required spectrums, including the first light having a first peak at a wavelength from about 400 nm to about 500 nm a first sub-peak having a full-width at half-maximum greater than a full-width at half-maximum of the first peak, the second light having a second peak at a wavelength from about 500 nm to about 700 nm and an intensity

greater than an intensity of the first sub-peak of the first light.



37.    HGC's infringement has caused and is continuing to cause damage and irreparable injury to Plaintiffs. Plaintiffs will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court, as a remedy at law alone would be inadequate.

38.    HGC's infringement has occurred with knowledge of the '509 patent and knowledge that its acts constitute infringement. HGC's continuing conduct, therefore, is willful.

39.    Plaintiffs are entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

### COUNT 3
### INFRINGEMENT OF U.S. PATENT NO. 12,078,302
### EXEMPLARY CLAIM 11

40.    HGC has infringed and continues to infringe one or more claims of the '302 patent, including but not limited to exemplary claim 11, in violation of 35 U.S.C. § 271(a), at least by without authority making, using, offering to sell and/or selling the HGC906409 Gavita Pro RS 2400e LED light fixture within the United States.

41.    The Gavita product includes a first light source that emits first light having a first light spectrum including an area of at least about 55% overlapped with an area of a normalized solar spectrum and a peak having a deviation equal to or smaller than about 0.14 compared with the normalized solar spectrum, as shown in the graph below.



42.    The Gavita product further includes a second light source with a second light spectrum and a third light source with a third light spectrum, as shown in the graph below.



43.    HGC's infringement has caused and is continuing to cause damage and irreparable injury to Plaintiffs. Plaintiffs will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court, as a remedy at law alone would be inadequate.

44.    HGC's infringement has occurred with knowledge of the '302 patent and knowledge that its acts constitute infringement. HGC's continuing conduct, therefore, is willful.

45.    Plaintiffs are entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

**COUNT 4**
**INFRINGEMENT OF U.S. PATENT NO. 12,218,290**
**EXEMPLARY CLAIM 14**

46.    HGC has infringed and continues to infringe one or more claims of the '290 patent, including but not limited to exemplary claim 14, in violation of 35 U.S.C. § 271(a), at least by

without authority making, using, offering to sell and/or selling the HGC906409 Gavita Pro RS 2400e LED light fixture within the United States.

47.    The Gavita product includes a light source including a blue emitter (the peak around 450 nm), with a spectrum that increases from 500 nm to 600 nm, and with the intensity of light emitted at 700 nm is configured to be less than about 10% of the maximum intensity of light emitted, as shown in the graph below.



48.    The CL and SEM images below, along with the corresponding spectrums, show that the light source includes a yellow phosphor having an emission peak in a range of 550 nm to 600 nm and a red phosphor having an emission peak in a range of 600 nm to 650 nm. The yellow phosphor and the red phosphor have different full widths at half maximum, and the full width at half maximum of the yellow phosphor is longer than the full widths at half maximum of the red phosphor.



49.     HGC's infringement has caused and is continuing to cause damage and irreparable injury to Plaintiffs. Plaintiffs will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court, as a remedy at law alone would be inadequate.

50.     HGC's infringement has occurred with knowledge of the '868 patent and knowledge that its acts constitute infringement. HGC's continuing conduct, therefore, is willful.

51.     Plaintiffs are entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

## COUNT 5
### INFRINGEMENT OF U.S. PATENT NO. 7,397,069
### EXEMPLARY CLAIM 1

52.     HGC has infringed and continues to infringe one or more claims of the '069 patent, including but not limited to exemplary claim 1, in violation of 35 U.S.C. § 271(a), at least by without authority making, using, offering to sell and/or selling the HGC906409 Gavita Pro RS 2400e LED light fixture within the United States.

53.    The Gavita product includes a plurality of LED packages. Optical microscope images of an LED package from the Gavita product are reproduced below before and after removal of an encapsulant. The image below right shows an LED chip within the package, which is a semiconductor device.

 

54.    The below images were created using a transmission electron microscope ("TEM") of the semiconductor device (light emitting diode) after removal from the package. The top image provided below shows the full epitaxial structure above a patterned sapphire substrate. The bottom image provided below indicates a plurality of layers including from top to bottom: an active layer comprising a multi-quantum well, a second semiconductor layer doped with the negative dopant silicon, an impurity diffusion prevention layer having a relatively high indium concentration, an overflow prevention layer having the negative dopant silicon and a relatively low concentration of indium, and first semiconductor layer containing the negative dopant silicon. The indium concentration of the impurity diffusion prevention layer, indicate a band gap smaller than those of the overflow prevention layer, the first semiconductor layer and the second semiconductor layer.



55.    HGC's infringement has caused and is continuing to cause damage and irreparable injury to Plaintiffs. Plaintiffs will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court, as a remedy at law alone would be inadequate.

56.    HGC's infringement has occurred with knowledge of the '069 patent and knowledge that its acts constitute infringement. HGC's continuing conduct, therefore, is willful.

57.    Plaintiffs are entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

### COUNT 6
### INFRINGEMENT OF U.S. PATENT NO. 9,269,868
### EXEMPLARY CLAIM 1

58.    HGC has infringed and continues to infringe one or more claims of the '868 patent, including but not limited to exemplary claim 1, in violation of 35 U.S.C. § 271(a), at least by

without authority making, using, offering to sell and/or selling the HGC906409 Gavita Pro RS 2400e LED light fixture within the United States.

59.    The Gavita product includes a plurality of LED packages. Optical microscope images of an LED package from the Gavita product are reproduced below before and after removal of an encapsulant. The image below right shows an LED chip within the package, which is a semiconductor device.

 

60.    Four TEM images of the light emitting element are reproduced below. The top image shows the full epitaxial structure above a patterned sapphire substrate. The second image indicates a plurality of layers including an n-type semiconductor layer, a p-type semiconductor layer, and a light emitting unit. The third image enlarges region above and below the light emitting unit and identifies a first well layer including a nitride semiconductor. The bottom image enlarges the region of the p-type semiconductor layer. As the image shows, a number of layers are located between the p-type semiconductor layer and the first well layer. Those layers include varying levels of indium, aluminum, and the p-type dopant magnesium within crystalline gallium nitride. Upon information and belief, and as indicated by the labels in the bottom image, the layers include, from bottom to top, a first layer that has relatively low magnesium doping, a second layer that has relatively high magnesium doping, and a third layer having a magnesium concentration between that of the first and second layers.



epitaxial structure

substrate

p-type semiconductor layer

light emitting unit

n-type semiconductor layer

p-type semiconductor layer

a first well layer
of a light emitting unit

p-type semiconductor layer

third layer (intermediate Mg concentration)

second layer (higher Mg concentration)

first layer (lower Mg concentration)

a first well layer

61.     HGC's infringement has caused and is continuing to cause damage and irreparable injury to Plaintiffs. Plaintiffs will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court, as a remedy at law alone would be inadequate.

62.     HGC's infringement has occurred with knowledge of the '868 patent and knowledge that its acts constitute infringement. HGC's continuing conduct, therefore, is willful.

63.     Plaintiffs are entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

## COUNT 7
## INFRINGEMENT OF U.S. PATENT NO. 7,667,225
## EXEMPLARY CLAIM 1

64.     HGC has infringed and continues to infringe one or more claims of the '225 patent, including but not limited to exemplary claim 1, in violation of 35 U.S.C. § 271(a), at least by without authority making, using, offering to sell and/or selling the HGC906409 Gavita Pro RS 2400e LED light fixture within the United States.

65.     The Gavita product includes a plurality of LED packages. Optical microscope images of an LED package from the Gavita product are reproduced below before and after removal of an encapsulant. The image below right shows an LED chip within the package, which is a semiconductor device.



66.     Below are three TEM images of the epitaxial structure of the LED chip. The first image shows the entire epitaxial structure above a patterned sapphire substrate. The second and

third images enlarges the region of the epitaxial structure around the multi-quantum well active layer. The LED chip includes from bottom to top in relevant part a substrate, a first semiconductor layer, a multi-quantum well structure including a well and a barrier, and a second semiconductor layer.



67.    Below is an APT (atomic probe tomography) indium composition map of one of the well layers.



68.    The APT indium composition map reflects the concentration level of indium in the well layer. It shows the areas of higher indium concentration in red and lower indium concentration in blue.

69.    Upon information and belief, at least one well layer in the LED chip includes a carrier trap portion having a band-gap energy decreasing from a periphery of the carrier trap portion to a center of the carrier trap portion. Upon information and belief, the area of higher indium concentration indicates a carrier trap portion. As the APT indium composition map shows, the indium concentration of the carrier trap portion is increasing from a periphery to a center. The indium concentration is inversely related to the band-gap energy. Thus, the increase in indium concentration within the carrier trap correlates to a drop in the band-gap energy.

70.    HGC's infringement has caused and is continuing to cause damage and irreparable injury to Plaintiffs. Plaintiffs will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court, as a remedy at law alone would be inadequate.

71.    HGC's infringement has occurred with knowledge of the '225 patent and knowledge that its acts constitute infringement. HGC's continuing conduct, therefore, is willful.

72.    Plaintiffs are entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

## COUNT 8
### INFRINGEMENT OF U.S. PATENT NO. 9,716,210
### EXEMPLARY CLAIM 1

73.    HGC has infringed and continues to infringe one or more claims of the '210 patent, including but not limited to exemplary claim 1, in violation of 35 U.S.C. § 271(a), at least by without authority making, using, offering to sell and/or selling the HGC906409 Gavita Pro RS 2400e LED light fixture within the United States.

74.    The Gavita product includes a plurality of LED packages, each of which includes a light emitting diode. The image of an LED package from the Gavita product is reproduced below left. The image below right shows an LED chip within the package.

 

75.    Below are three TEM images of the epi-structure of the LED chip. The top image shows the entire epi-structure above a patterned sapphire substrate. The second image enlarges the region of the epi-structure around and below the multi-quantum well active layer. The epi-structure includes from top to bottom in relevant part a p-type contact layer, a multi-quantum well active region, and an n-type contact layer. The active region, which appears as a relatively bright repeating pattern of indium doped layers separated by relatively dark barrier layers in the upper half of the bottom image. Below the active region is a superlattice layer, which includes a plurality of layers, and appears as a relatively faint and closely spaced pattern. Below the superlattice is a spacer layer, which includes a plurality of layers, and appears as relatively faint and widely spaced.



76.    Based on the relationship between indium doping concentration and brightness in

TEM images, which correlates inversely with bandgap, and upon information and belief, the spacer

layer has a bandgap smaller than the barrier layers of the multi-quantum well, but higher than the

bandgap of the quantum well layers.

77.     HGC's infringement has caused and is continuing to cause damage and irreparable injury to Plaintiffs. Plaintiffs will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court, as a remedy at law alone would be inadequate.

78.     HGC's infringement has occurred with knowledge of the '210 patent and knowledge that its acts constitute infringement. HGC's continuing conduct, therefore, is willful.

79.     Plaintiffs are entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

### COUNT 9
### INFRINGEMENT OF U.S. PATENT NO. 10,418,514
### EXEMPLARY CLAIM 1

80.     HGC has infringed and continues to infringe one or more claims of the '514 patent, including but not limited to exemplary claim 1, in violation of 35 U.S.C. § 271(a), at least by without authority making, using, offering to sell and/or selling the HGC906409 Gavita Pro RS 2400e LED light fixture within the United States.

81.     The Gavita product includes a plurality of LED packages, each of which includes a light emitting diode. The image of an LED package from the Gavita product is reproduced below left. The image below right shows an LED chip within the package.

 

82.     Three TEM images of the light emitting element are reproduced below. The top image shows the full epitaxial structure above a patterned sapphire substrate. The second and third image enlarges the region of the epi-structure around the active region. The epi-structure includes

from top to bottom in relevant part a p-type contact layer, an active region comprising multi-quantum well structure, and an n-type contact layer. The active region, which appears as a relatively bright repeating pattern of indium doped layers separated by relatively dark barrier layers in the upper half of the bottom image. A p-type clad layer is disposed between the p-type contact layer and the active region. Below the active region is a superlattice layer, which includes a plurality of layers, and appears as a relatively faint and closely spaced pattern. Below the superlattice is a spacer layer, which includes a plurality of layers, and appears as relatively faint and widely spaced.



83. Based on the relationship between indium doping concentration and brightness in TEM images, which correlates inversely with bandgap, and upon information and belief, the spacer layer has a bandgap smaller than the barrier layers of the multi-quantum well, but higher than the bandgap of the quantum well layers.

84.     HGC's infringement has caused and is continuing to cause damage and irreparable injury to Plaintiffs. Plaintiffs will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court, as a remedy at law alone would be inadequate.

85.     HGC's infringement has occurred with knowledge of the '514 patent and knowledge that its acts constitute infringement. HGC's continuing conduct, therefore, is willful.

86.     Plaintiffs are entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

**COUNT 10**
**INFRINGEMENT OF U.S. PATENT NO. 8,981,410**
**EXEMPLARY CLAIM 1**

87.     HGC has infringed and continues to infringe one or more claims of the '410 patent, including but not limited to exemplary claim 1, in violation of 35 U.S.C. § 271(a), at least by without authority making, using, offering to sell and/or selling the HGC906409 Gavita Pro RS 2400e LED light fixture within the United States.

88.     The Gavita product includes a plurality of LED packages, each of which includes a light emitting diode. The image of an LED package from the Gavita product is reproduced below left. The image below right shows an LED chip within the package.

 

89.     Two TEM images of the light emitting element are reproduced below. The top image shows the full epitaxial structure above a patterned sapphire substrate. The bottom image enlarges the region of the epi-structure around the active layer.



90.    The image below is an SEM image created of a hole made on the back surface of

the substrate to expose the dielectric layers deposited on that back surface. The substrate appears

at the top of the image. The layer structure shown in the image below includes, in relevant part,

the substrate, a low-index total internal reflection layer, and a distributed Bragg reflector (DBR).

The low-index total internal reflection layer comprises a relatively thick layer of silicon dioxide

disposed between the substrate and the DBR.



91.    The DBR is comprised of interleaved layers of the high index dielectric titanium dioxide (TiO2) and low index dielectric silicon dioxide (SiO2). The titanium dioxide layers appear as relatively light and thin layers relative to the silicon dioxide layers. As the image shows, the upper layers of the DBR comprise a first plurality of periods where the high index material layers have a first thickness and the low index materials have a second thickness. The image also shows that the lower layers of the DBR comprise a second plurality of periods where the high index material layers have a third thickness and the low index materials have a fourth thickness.

92.    HGC's infringement has caused and is continuing to cause damage and irreparable injury to Plaintiffs. Plaintiffs will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court, as a remedy at law alone would be inadequate.

93.    HGC's infringement has occurred with knowledge of the '410 patent and knowledge that its acts constitute infringement. HGC's continuing conduct, therefore, is willful.

94.    Plaintiffs are entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

## COUNT 11
## INFRINGEMENT OF U.S. PATENT NO. 9,269,871
## EXEMPLARY CLAIM 1

95.    HGC has infringed and continues to infringe one or more claims of the '871 patent, including but not limited to exemplary claim 1, in violation of 35 U.S.C. § 271(a), at least by without authority making, using, offering to sell and/or selling the HGC906409 Gavita Pro RS 2400e LED light fixture within the United States.

96.    The Gavita product includes a plurality of LED packages, each of which includes a light emitting diode. The image of an LED package from the Gavita product is reproduced below left. The image below right shows an LED chip within the package.

  

97.    Below are three Focused Ion Beam-Scanning Electron Microscope (FIB-SEM) images of an LED chip from the Gavita product. The left image shows the top image of the LED chip. The center image shows the area surrounding the electrode pad. The dark space near the electrode pad in the bottom image indicates a hole created using a FIB. The right composite image shows the cross-section of the hole. Focusing in on the central part of the image, the cross-section shows a light emitting stacked structure comprising a first contact layer and a mesa structure positioned over at least a portion of the first contact layer.



98.    The Gavita product includes a first electrode structure positioned over the first contact layer and including a first electrode pad and an extension portion extending from the first electrode pad; and a second electrode structure positioned over the mesa structure.



99.    The first electrode structure in the Gavita product comprises a pad type current shielding layer formed under the first electrode pad.



100.    The first electrode structure in the Gavita product comprises a dot-pattern current shielding layer formed under the extension portion of the first electrode structure, and the extension portion includes another portion that is in contact with the first contact layer.



101.   HGC's infringement has caused and is continuing to cause damage and irreparable injury to Plaintiffs. Plaintiffs will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court, as a remedy at law alone would be inadequate.

102.   HGC's infringement has occurred with knowledge of the '871 patent and knowledge that its acts constitute infringement. HGC's continuing conduct, therefore, is willful.

103.   Plaintiffs are entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs request that the Court enter judgment in their favor and against Defendant HGC, Inc., as follows:

A.   A judgment that Defendant infringes the '120, '509, '302, '290, '069, '868, '225, '210, '514, '410 and '871 patents;

B.   A preliminary and permanent injunction restraining and enjoining Defendant, its officers, partners, agents, servants, employees, parents, subsidiaries, divisions, affiliate corporations, joint ventures, other related business entities and all other persons acting in concert, participation, or in privity with them, and their successors and assigns, from infringing the '120, '509, '302, '290, '069, '868, '225, '210, '514, '410 and '871 patents;

C.   An award of damages to Plaintiffs Seoul Semiconductor and Seoul Viosys arising from Defendant's past and continuing infringement up until the date Defendant is finally and permanently enjoined from further infringement, including compensatory damages;

D.   A determination that Defendant's infringement of one or more of the '120, '509, '302, '290, '069, '868, '225, '210, '514, '410 and '871 patents was willful, and a trebling of damages pursuant to 35 U.S.C. § 284;

E.      A determination that this is an exceptional case and awarding the Seoul Plaintiffs' attorneys' fees pursuant to 35 U.S.C. § 285;

F.      An order awarding the Seoul Plaintiffs the costs and expenses that they have incurred in prosecuting this action;

G.      An order awarding the Seoul Plaintiffs pre- and post-judgment interest on their damages; and

H.      Such other and further relief in law or in equity as this Court deems just and proper.

## JURY DEMAND

Plaintiffs Seoul Semiconductor and Seoul Viosys respectfully request a jury trial on all issues so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Megan E. Dellinger*

OF COUNSEL:

David C. Radulescu, Ph.D.
Etai Lahav
Jonathan Auerbach
Andrew Brown
RADULESCU LLP
5 Penn Plaza, 19th Floor
New York, NY   10001
(646) 502-5950

Kevin S. Kudlac
RADULESCU LLP
111 Congress Avenue, Suite 500
Austin, TX   78701
(512) 656-5743

April 9, 2025

Jeremy A. Tigan (#5239)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE   19899
(302) 658-9200
jtigan@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Plaintiffs Seoul Semiconductor Co., Ltd. and Seoul Viosys Co., Ltd.*